# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MIKE CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:18-cv-04129-BCW |
| | ) |
| v. | ) |
| | ) |
| CHERI TOALSON REISCH, individually and in her official capacity as Representative of the 44th District of the Missouri House of Representatives, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT CHERI TOALSON REISCH'S SUGGESTIONS
## IN SUPPORT OF MOTION TO DISMISS

Plaintiff Mike Campbell brings this lawsuit under 42 U.S.C. § 1983 asking the Court to find that Defendant Cheri Reisch violated his First Amendment rights when she blocked him from her Twitter account. Plaintiff has tailored his allegations to fit the holding of a single, albeit highly-publicized district court decision. That case, however, was wrongly decided. Plaintiff's Complaint therefore fails to state a First Amendment violation, and the Court should dismiss it with prejudice.

Respectfully submitted,

/s/ Lowell D. Pearson
Lowell D. Pearson        MO# 46217
Michael R. Owens       MO# 67002
HUSCH BLACKWELL LLP
235 East High Street, Suite 200
P. O. Box 1251
Jefferson City, MO 65102
Telephone: (573) 761-1115
Facsimile: (573) 634-7854
lowell.pearson@huschblackwell.com
michael.owens@huschblackwell.com

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................................... i
INTRODUCTION .......................................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................. 1
    I.    Background: Twitter Inc.'s Social Media Platform ........................................................ 2
    II.    Knight First Amendment Institute v. Trump ................................................................ 3
ARGUMENT .................................................................................................................................. 7
LEGAL STANDARD .................................................................................................................... 7
    I.    Introduction .................................................................................................................... 7
    II.    *Knight* Is Simply Wrong About A Blocked User's Ability To Participate In The Interactive Space .............................................................................................................. 8
    III.    Ms. Reisch Did Not Act Under Color Of State Law When She Blocked Plaintiff From Her Twitter Account ...................................................................................................... 9
        A.    Ms. Reisch Does Not Operate Her Account On Behalf Of The State .......................... 9
        B.    Blocking A Twitter Account Is Not An Exercise Of State Power .............................. 10
        C.    *Knight* Erred In Its Analysis Of The State Action Requirement ................................ 11
    IV.    Ms. Reisch's Twitter Account Is Not A Designated Public Forum................................. 12
        A.    Ms. Reisch's Twitter Account Is Not Government Property, Precluding A Finding That It Is A Designated Public Forum ......................................................................... 13
        B.    Declaring A First Amendment Right To Access Ms. Reisch's Twitter Risks Closure Of The Forum Altogether ............................................................................................... 14
CONCLUSION ............................................................................................................................. 15
CERTIFICATE OF SERVICE ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................................. 7

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*,
　531 U.S. 288 (2001) ..................................................................................................... 11, 12

*Cohen v. California*,
　403 U.S. 15 (1971) ............................................................................................................. 15

*Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*,
　518 U.S. 727 (1996) ............................................................................................................. 1

*Gen. Media Commc'ns, Inc. v. Cohen*,
　131 F.3d 273 (2d Cir. 1997) ................................................................................................. 5

*Gentry v. City of Lee's Summit, Mo.*,
　10 F.3d 1340 (8th Cir. 1993) ............................................................................................... 9

*Halleck v. Manhattan Cmty. Access Corp.*,
　882 F.3d 300 (2d Cir. 2018) ............................................................................................... 11

*Hamilton v. Palm*,
　621 F.3d 816 (8th Cir. 2010) ............................................................................................... 7

*Kittle-Aikeley v. Strong*,
　844 F.3d 727 (8th Cir. 2016) ............................................................................................... 7

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
　302 F. Supp. 3d 541 (S.D.N.Y. 2018) ..................................................... 1, 2, 3, 4, 6, 8, 9, 11

*Lugar v. Edmondson Oil Co.*,
　457 U.S. 922 (1982) ........................................................................................................... 10

*Luman v. Anderson*,
　No. 08-0514-CV-W-HFS, 2010 WL 11565449 (W.D. Mo. Nov. 16, 2010) ....................... 7

*Morgan v. Bevin*,
　298 F. Supp. 3d 1003 (E.D. Ky. 2018) ..................................................................... 1, 13, 15

*National Socialist Party of America v. Village of Skokie*,
　432 U.S. 43 (1977) ............................................................................................................. 15

*Niere v. St. Louis Cty., Missouri*,
　305 F.3d 834 (8th Cir. 2002) ........................................................................................ 9, 10

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
　460 U.S. 37 (1983) ......................................................................................................... 5, 12

*Pleasant Grove City, Utah v. Summum*,
　555 U.S. 460 (2009) ..................................................................................................... 12, 14

*Rickmyer v. Browne*,
　995 F. Supp. 2d 989 (D. Minn. 2014) ................................................................................. 7

*Schmitz v. Upper Des Moines Opportunity, Inc.*,
　No. C08-4087-MWB, 2009 WL 3019812 (N.D. Iowa Sept. 21, 2009) .............................. 9

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
　941 F. Supp. 2d 1145 (N.D. Cal. 2013) .............................................................................. 8

*United States v. Classic*,
　313 U.S. 299 (1941) ........................................................................................................... 10

*United States v. Stevens*,
  559 U.S. 460 (2010) .................................................................................................... 14
*Van Orden v. Perry*,
  545 U.S. 677 (2005) ...................................................................................................... 9
*Virginia v. Black*,
  538 U.S. 343 (2003) .................................................................................................... 14
*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) .......................................................................................... 12, 13
*West v. Atkins*,
  487 U.S. 42 (1988) ..................................................................................... 4, 5, 10, 11
*Zherka v. DiFiore*,
  412 F. App'x 345 (2d Cir. 2011) .................................................................................. 9

**Statutes**
42 U.S.C. § 1983 ................................................................................................. 1, 7, 9, 10, 11

**Other Authorities**
*Smolla & Nimmer on Freedom of Speech* § 8.33.25 (2018) ......................................... 13

**Rules**
Fed. R. Civ. P. 8 ................................................................................................................ 7

# INTRODUCTION

This lawsuit is the latest in a handful of cases that seek to extend long-established First Amendment principles to the new and evolving world of social media. The results so far have been mixed. *Compare*, *e.g*, *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1005 (E.D. Ky. 2018) (holding that Kentucky Governor Matt Bevin did not violate the First Amendment by blocking certain Twitter users because "a person's right to speak is not infringed when government simply ignores that person while listening to others" (citation omitted)); *with Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018) ("*Knight*") (holding that the "interactive space" on President Trump's Twitter account, where users can make comments in response to the President's tweets, was a "designated public forum" which prohibited viewpoint discrimination).

The Supreme Court has cautioned that courts be "wary of the notion that a partial analogy in one context, for which we have developed doctrines, can compel a full range of decisions in such a new and changing area." *Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 749 (1996). And "social media is certainly a new and changing area," *Morgan*, 298 F. Supp. at 1010. But despite the Supreme Court's admonition, *Knight* indulged a host of partial analogies and questionable distinctions to contrive a sliver of First Amendment protection, one so narrow that it is of no practical significance to any speech rights. In this case, Plaintiff seeks to build on the erroneous foundation of *Knight*. The Court should reject *Knight*'s novel First Amendment theory and Plaintiff's attempt to invoke it here.

# STATEMENT OF FACTS

Cheri Toalson Reisch, a resident of Hallsville, Missouri, has operated a Twitter account under the handle "@CheriMO44" since September 2015. Complaint (Doc. 1), ¶ 25. On her Twitter profile, Ms. Reisch describes her many facets: "Christian, MO State Rep 44th District,

Mother, Grandmother." *Id.*, ¶ 25. She uses the account to post content (or "tweet") about various subjects of personal interest to her, including, for example, photographs of her grandchildren,[1] her support for Hallsville High School athletics,[2] and her pride in Columbia, Missouri's status as home to the only Oscar Mayer hot dog factory in the country.[3]

Ms. Reisch also represents the citizens of District 44 in the Missouri House of Representatives. Complaint (Doc. 1), ¶ 7. Unsurprisingly, some of her tweets are political in nature or reference her work as an elected official. *Id.*, ¶¶ 26-29. These facts, according to Plaintiff Mike Campbell, mean that Ms. Reisch has designated her Twitter account a "public forum" and, thus, Plaintiff has a First Amendment right to post tweets that appear on her Twitter feed. *Id.*, ¶ 40. Plaintiff's sole claim asserts that Ms. Reisch violated this First Amendment right by engaging in viewpoint discrimination when she blocked his Twitter account, allegedly for expressing views critical of her. *Id.,* ¶¶ 30-33, 45.

## I. Background: Twitter Inc.'s Social Media Platform

Twitter is an online social networking platform owned and operated by Twitter, Inc., a publicly-held corporation headquartered in San Francisco, California. Through the service, users can post and interact with "tweets"—short messages comprising no more than 280 characters. Tweets may also hyperlink to websites, quote or respond to other tweets, or contain photographs or videos. *See generally* Doc. 1-1.

---

[1] Cheri Toalson Reisch (@CheriMO44), Twitter (Jun. 2, 2017, 5:47 PM), https://twitter.com/CheriMO44/status/870804389224738816 (*"Centralia Anchorfest with grandgirls, anchored in tradition."*).

[2] Cheri Toalson Reisch (@CheriMO44), Twitter (May 17, 2017, 6:13 PM), https://*twitter*.com/CheriMO44/status/865012555080638464 (*"Congratulations to the baseball teams of Hallsville HS & Sturgeon HS on winning their respective District titles! Great job! #MO44"*).

[3] Cheri Toalson Reisch (@CheriMO44), Twitter (Aug. 13, 2018, 12:25 PM) , https://twitter.com/CheriMO44/status/1029086520991469568 (*"Did you know the only place in the world that Oscar Mayer hot dogs are made is in Columbia Missouri?"*).

The collection of tweets generated by a user's account are displayed chronologically as a "timeline." By clicking on a tweet in a user's timeline, one can also view any replies to a given tweet (including replies to those replies). Typically, a user's timeline is available to everyone with internet access (even if they have not registered for a Twitter account).

Importantly, a Twitter user does not own his or her account. Pursuant to the "Twitter Terms of Service"—the contract that governs a user's relationship with Twitter, Inc.—a user is granted a "personal, worldwide, royalty-free, non-assignable and non-exclusive license to use [Twitter]," but only "in the manner permitted by these Terms." *Twitter Terms of Service*, available at https://twitter.com/en/tos, § 3, ¶ 2 (accessed August 29, 2018). However, "[a]ll right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter." *Id.*, § 4, ¶ 10. Further, Twitter may terminate a user's license to use the service for "any or no reason" at all. *Id.*, § 4, ¶ 12.

As a means of controlling interaction with other users, Twitter permits a user to block specified accounts. A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets.

## II. Knight First Amendment Institute v. Trump

Plaintiff has crafted his Complaint to fit the Southern District of New York's holding in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 550 (S.D.N.Y. 2018). *See* Complaint (Doc. 1), ¶ 37 (alleging that Ms. Reisch's conduct is "indistinguishable from President Trump's conduct found unlawful in *Knight First Amendment Institute*"). Because the viability of Plaintiff's Complaint depends both on the correctness of *Knight*'s holding, it is worth visiting the exceedingly narrow grounds—and the incorrect analysis—on which that court concluded that President Trump violated the First Amendment.

In *Knight*, individual plaintiffs, along with the Knight First Amendment Institute at Columbia University, a public advocacy group, filed suit against President Trump and other officials involved in operating his Twitter account. *Id.* at 541. They alleged that the President violated the plaintiffs' First Amendment rights by blocking them on Twitter based on their viewpoints. *Id.*

The court first confronted the question of whether the President's actions could even be characterized as government action. The President disputed that the challenged conduct—"blocking"—was undertaken "under color of state law," as a § 1983 claim requires, because "an official takes action under color of state law when he 'exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). The court did not directly address this argument. Instead, it bootstrapped the state action element to its public forum analysis, concluding that "determining that a particular facility or location is a public forum usually suffices to render the challenged action taken there to be state action subject to First Amendment limitations." *Id.* at 567-68 (citation omitted).

In determining whether the President's account constituted any sort of "public forum" triggering First Amendment scrutiny, the court spliced the account into three component parts: "the content of tweets, the timeline comprised of the account's tweets, and the interactive space of each tweet." *Id*. It concluded that the *content* of the President's tweets are properly characterized as government speech to which forum analysis does not apply. *Id*. at 571. So too was the timeline: "the timeline merely aggregates the content of all of the account's tweets, . . . all of which is government speech." *Id.* at 571-72 (internal alterations and citation omitted).

But, according to the court, forum analysis is appropriate for "interactive space for replies and retweets created by each tweet." *Id.* at 572. Unlike the President's own tweets, this interactive space is not government speech because its content is not controlled by or associated with the President, but the replying user. *Id.* Further, this interactive space is "generally accessible to the public at large without regard to political affiliation or any other limiting criteria, such that any Twitter user who has not been blocked may so engage," and its "essential function . . . is to allow private speakers to engage with the content of the tweet." *Id.* at 572-73.

The court dismissed at the outset the notion that the interactive space associated with the President's tweets qualifies as a "traditional" public forum. "These spaces, like streets and parks, 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 573 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Twitter, a modern innovation, plainly does not hold such status.

The "interactive space of each tweet," however, is different. *Id.* at 575. The court found that this space constitutes a "designated public forum." *Id.* Recognizing that "governmental intent" serves as "the touchstone for determining whether a public forum has been created," *id.* at 574 (quoting *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 279 (2d Cir. 1997)), the court inferred from a number of circumstantial factors that the President intended to create a public forum.

But even after dodging the inconvenient state action analysis, splicing the President's Twitter account into component parts, and inferring an "intent" to open an unrestricted public forum by an actor that regularly excludes people from that very forum, the only part of the

KCP-8403292　　　　　　　　　　　　　　　　　　　　　5
Case 2:18-cv-04129-BCW   Document 10   Filed 08/31/18   Page 9 of 20

President's Twitter account that *Knight* found susceptible to forum analysis is the space bracketed below:



*Knight*'s "interactive space"

Donald J. Trump (@realDonaldTrump), Twitter (Aug. 29, 2018, 5:41 AM), https://twitter.com/realDonaldTrump/status/1034783131855998976.

The President had stipulated that he had blocked users based on the views expressed in their Tweets (namely, criticism of him). Accordingly, the court declared that the President violated the First Amendment by excluding the plaintiffs from a designated public forum based on the content of their speech. *Id.* at 580.

**ARGUMENT**

The Court should dismiss Plaintiff's Section 1983 claim because (1) Plaintiff has not, in fact, been excluded from the interactive space associated with Ms. Reisch's tweets (the only plausible public forum alleged); (2) his Complaint fails to allege plausible facts showing that Ms. Reisch acted under color of state law when she blocked him on Twitter; (3) Ms. Reisch's Twitter account lacks the essential characteristics of a designated public forum; and (4) creating a First Amendment right to access Ms. Reisch's Twitter account would undermine, not promote, speech interests by risking closure of her account.

**LEGAL STANDARD**

**I.      Introduction**

Fed. R. Civ. P. 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that it "be simple, concise, and direct." Fed. R. Civ. P. 8 (a)(1), (d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Further, to state a § 1983 claim, a "[p]laintiff must plead facts demonstrating that the individual committing the offending action was acting under color of state law." *Rickmyer v. Browne*, 995 F. Supp. 2d 989, 997 (D. Minn. 2014).

The citations to Twitter postings and information on Twitter's homepage that appear in this brief are matters of which the Court may take judicial notice and consider on a motion to dismiss. *See*, *e.g.*, *Kittle-Aikeley v. Strong*, 844 F.3d 727, 744 (8th Cir. 2016) (taking judicial

notice of websites); *Luman v. Anderson*, No. 08-0514-CV-W-HFS, 2010 WL 11565449, at *3 n. 2 (W.D. Mo. Nov. 16, 2010) (taking "judicial notice of internet postings"); *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1147-48 (N.D. Cal. 2013) (judicial notice appropriate for blog posts "readily verifiable by reference to the web addresses").

**II.    *Knight* Is Simply Wrong About A Blocked User's Ability To Participate In The Interactive Space**

Both *Knight* and Plaintiff's Complaint rest entirely on the premise that a Twitter user can "prevent, through blocking, other Twitter users . . . from participating in the interactive space associated with the [account holder's] tweets. *Knight*, 302 F. Supp. 3d 566-67; *see also* Complaint (Doc. 1), ¶ 37. As evident from Ms. Reisch's account, this is false.



Cheri Toalson Reisch (@CheriMO44), Twitter (Jun. 22, 2018, 6:30 PM), https://twitter.com/CheriMO44/status/1010334309562142720.

As Becky's tweet shows, a blocked user is only prevented from directly replying to the blocking user. She still, however, may reply to others' replies to the blocking user's original

KCP-8403292                                                  8
Case 2:18-cv-04129-BCW   Document 10   Filed 08/31/18   Page 12 of 20

tweet. Thus, Becky, Plaintiff, or any other blocked user can still participate in the interactive space by replying to other user's tweets. The *only* restriction is that she cannot post a *direct* reply to Ms. Reisch's original tweet,[4] and instead must reply to another user's reply.

The sum total of speech rights at stake for Plaintiff, then, is this: whether his tweets will appear immediately adjacent to Ms. Reisch's original tweet or instead will appear further down the comment thread. Nothing more. The evolution of social media may one day present a case of such gravity that courts must significantly revise existing First Amendment doctrine. This is not that case.

### III. Ms. Reisch Did Not Act Under Color Of State Law When She Blocked Plaintiff From Her Twitter Account

A claim under 42 U.S.C. § 1983 requires that the challenged action be taken "under color of state law." *Gentry v. City of Lee's Summit, Mo.*, 10 F.3d 1340, 1342 (8th Cir. 1993). Similarly, "[t]he First Amendment applies only to state actors." *Niere v. St. Louis Cty., Missouri*, 305 F.3d 834, 838 (8th Cir. 2002). Plaintiff's claim fails because he has not alleged a deprivation of any speech rights attributable to state action.

#### A. Ms. Reisch Does Not Operate Her Account On Behalf Of The State

An act undertaken by an individual who happens to hold public office does not become "state action" simply by virtue of the actor's status as a public official. *Schmitz v. Upper Des Moines Opportunity, Inc.*, No. C08-4087-MWB, 2009 WL 3019812, at *8 (N.D. Iowa Sept. 21, 2009). Rather, individuals who hold public office routinely engage in personal conduct that are not exercises of state power. *See Van Orden v. Perry*, 545 U.S. 677, 723 (2005) ("[W]hen public officials deliver public speeches, we recognize that their words are not exclusively a transmission from *the* government because those oratories have embedded within them the inherently personal

---

[4] In fairness to Judge Buchwald (who decided *Knight*), the parties stipulated to this fact. *Knight*, 302 F. Supp. 3d 567. She therefore had no basis to question its accuracy, even though the stipulation was wrong.

views of the speaker."); *Zherka v. DiFiore*, 412 F. App'x 345, 347 (2d Cir. 2011) (holding that a district attorney's telephone call to newspaper complaining about an article was not state action). That Ms. Reisch occasionally intersperses tweets about her legislative work with those about her personal interests does not render her tweets state action.

### B. Blocking A Twitter Account Is Not An Exercise Of State Power

The test for whether Ms. Reisch's conduct constitutes state action depends on the source of her authority to undertake the challenged conduct. To state a claim, Plaintiff must show that Ms. Reisch "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law'" when she blocked Plaintiff's Twitter account. *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (noting that "the deprivation must be caused by the exercise of some right or privilege *created by the State* . . . ." (emphasis added)). Plaintiff cannot do so here.

Plaintiff's Complaint is devoid of any allegation that Ms. Resich's power to block Plaintiff's account is an "exercise of [a] right or privilege created by the State." *Lugar*, 457 U.S. at 937. Rather, Plaintiff readily concedes that Twitter itself is the source of Ms. Reisch's (and other Twitter users') ability to block Plaintiff or other users' accounts. Complaint, (Doc. 1), ¶ 17 ("Twitter also allows its users to block particular users from following their tweets."). Each and every Twitter account, whether operated by the President of the United States or Marnie the Dog[5], has the same authority to block other users' accounts. And that authority exists only to the extent that Twitter—not the state—allows its users to have it. Ms. Reisch's use of a feature of Twitter's software simply cannot supply the state action required to sustain a § 1983 claim.

---

[5] Marnie the Dog is a 16-year old Shih Tzu that has amassed over 112,000 followers on her Twitter account, @MarnietheDog. *See* Marnie The Dog (@MarnieTheDog), Twitter, https://twitter.com m/MarnieTheDog?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor.

### C. Knight Erred In Its Analysis Of The State Action Requirement

The Court should not follow the analysis of state action undertaken in *Knight*. There, the court somehow concluded that the use of a software feature available to 300 million users satisfied the Supreme Court's formulation of "state action" under § 1983. As explained below, the court erred in its analysis.

Like Ms. Reisch, the President disputed that his use of Twitter's blocking feature was an exercise of power possessed by the state because "blocking is a functionality made available to every Twitter user"—not just state actors. *Knight*, 302 F. Supp. 3d at 568 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). But the court side-stepped this question. The court responded that it need not analyze the requirement of state action independently; rather, it could simply bootstrap this element to its public forum analysis. *Id.* at 567-68. The court reasoned that simply "determining that a particular facility or location is a public forum usually suffices to render the challenged action taken there to be state action subject to First Amendment limitations." *Id*. (citing *Halleck v. Manhattan Cmty. Access Corp.*, 882 F.3d 300, 306-07 (2d Cir. 2018) (further citations omitted)). It therefore declined to undertake a more nuanced analysis of the factors for distinguishing between private and state action set forth in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001) (the "*Brentwood* factors").

But this shortcut is inappropriate here. As is clear from the cases cited by the court, a presumption of state action in public forums arises only because "facilities or locations deemed to be public forums are *usually* operated by governments." *Halleck*, 882 F.3d at 306 (emphasis added). While perhaps true in the usual case, it is decidedly not true here. Thus, a formal analysis of the *Brentwood* factors—which apply in the *unusual* case like this one where "the party exercising control over the forum is a nongovernmental entity," *Knight*, 302 F. Supp. 3d at 568—should have been undertaken by the court.

Under *Brentwood*, whether the conduct of a private actor qualifies as state action turns on a number of factors, including whether "it results from the State's exercise of coercive power," or "the State provides significant encouragement;" or if "a private actor operates as a willful participant in joint activity with the State or its agents," . . . is controlled by an agency of the State," . . . is entwined with governmental policies," or "entwined in [government] management or control." *Brentwood*, 531 U.S. at 296 (internal quotations omitted). Ms. Reisch's decision to block Plaintiff implicated none of these factors. The Court should consider the *Brentwood* factors here and find that none of Plaintiff's allegations can plausibly transform Ms. Reisch's personal conduct into state action.

## IV. Ms. Reisch's Twitter Account Is Not A Designated Public Forum

The Court should also dismiss Plaintiff's Complaint because Plaintiff has not—and cannot—allege facts showing that any part of Ms. Reisch's Twitter account is a "designated public forum."

"[A] government entity may create "a designated public forum" if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose."*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009). Consistent with this formulation, the public forum doctrine applies to claims of "a right of access to *public property*." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) (emphasis added). The government "does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015). And a court should decline to deem a forum "public" where doing so jeopardizes the forum's very existence. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009).

### A. Ms. Reisch's Twitter Account Is Not Government Property, Precluding A Finding That It Is A Designated Public Forum

Plaintiff seeks to apply public forum analysis to a website owned—not by the State of Missouri, Ms. Reisch in her official capacity, or even Ms. Reisch in her individual capacity—but by a private party, Twitter, Inc. He cannot do so.

Under Twitter's Terms of Service, all ownership rights over the account belong exclusively to Twitter, Inc. *See Twitter Terms of Service*, available at https://twitter.com/en/tos, § 4, ¶ 10 (accessed August 29, 2018) (noting that "[a]ll right, title, and interest in and to the Services" belong to Twitter, Inc.). Ms. Reisch's ability to use these services rests solely on Twitter, Inc.'s permission—permission that it could revoke tomorrow for any or no reason. Twitter, Inc.'s exclusive ownership plainly extends to the "interactive space" that Plaintiff claims to be a designated public forum. The fact that, for the moment, Twitter continues to grace Ms. Reisch with continued permission to use its services cannot plausibly confer her—much less the State of Missouri—ownership of the account.

The Eastern District of Kentucky recognized as much in concluding that plaintiffs who brought suit against the Governor of Kentucky for blocking them on social media were unlikely to succeed on their claim. *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1010-1013 (E.D. Ky. 2018). The court held that Governor Bevin's social media accounts "are privately owned channels of communication" which "are not converted to public property by the use of a public official," and therefore were not susceptible to forum analysis. *Id.*; *see also Smolla & Nimmer on Freedom of Speech* § 8.33.25 (2018) (opining that "[t]he better view is that social media pages operated by government entities may be public forums, but personal social media pages operated by public officials, even when used to discuss public policy issues, may not"). Because Twitter lacks this

essential feature of a public forum, Plaintiff cannot state a claim for relief arising from his exclusion from it.

> **B.      Declaring A First Amendment Right To Access Ms. Reisch's Twitter Risks Closure Of The Forum Altogether**

The Supreme Court has added one final caveat to its test for identifying designated public forums: "where the application of forum analysis would lead almost inexorably to closing of the forum, it is obvious that forum analysis is out of place." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 480 (2009).

In *Pleasant Grove*, a municipality was sued for denying the plaintiff's request to place a religious monument in a public park. *Id.* The Supreme Court upheld the municipality's right to pick and choose which privately-donated monuments it would display in the park, noting that "[i]f government entities must maintain viewpoint neutrality in their selection of donated monuments, they must either brace themselves for an influx of clutter or face the pressure to remove longstanding and cherished monuments." *Id.* at 479-80 (internal quotation omitted). In that case, the Court reasoned, "most parks would have little choice but to refuse all such donations." *Id.* at 480. It would be inappropriate to deem the park a public forum—and thereby impose the attendant requirement of viewpoint neutrality—only to cause the closure of that very forum. *Id.*

The same analysis applies here. Characterizing Ms. Reisch's Twitter account as a designated public forum virtually eliminates her ability to control the content of messages appearing on her account. Ms. Reisch would be compelled by law to expose herself and her audience to unwanted content on her account. Such unwanted speech might include truly-repugnant (yet clearly First Amendment protected) content. *See Virginia v. Black*, 538 U.S. 343 (2003) (holding that cross-burning by the KKK is protected by the First Amendment); *United*

*States v. Stevens*, 559 U.S. 460 (2010) (videos of animal cruelty protected); *National Socialist Party of America v. Village of Skokie*, 432 U.S. 43 (1977) (Nazi march through a predominately-Jewish neighborhood protected); *Cohen v. California*, 403 U.S. 15 (1971) (profanity protected). Or it might include speech that is simply annoying. *See Bevin*, 298 F. Supp. 3d at 1012 ("[I]f this Court ruled Governor Bevin could not block anyone from his Twitter or Facebook accounts, his accounts could be flooded with internet spam such that the purpose of conveying his message to his constituents would be impossible and the accounts would effectively, or actually, be closed.").

Ms. Reisch might reasonably conclude that she would prefer no Twitter account at all to one on which she and her audience are constitutionally compelled to tolerate profane, racist, or obnoxious content. Closure of the very forum to which Plaintiff seeks access would undermine, not advance, the First Amendment interests Plaintiff purports to promote. For this reason too, the Court should decline to characterize Ms. Reisch's Twitter account as a designated public forum, and dismiss Plaintiff's Complaint accordingly.

## CONCLUSION

Plaintiff has not stated a claim and, in light of the First Amendment principles set forth above, cannot do so. The Complaint should be dismissed with prejudice.

Dated: August 31, 2018.  Respectfully submitted,

/s/ Lowell D. Pearson
Lowell D. Pearson   MO# 46217
Michael R. Owens   MO# 67002
HUSCH BLACKWELL LLP
235 East High Street, Suite 200
P. O. Box 1251
Jefferson City, MO  65102
Telephone:  (573) 761-1115
Facsimile:  (573) 634-7854
lowell.pearson@huschblackwell.com
michael.owens@huschblackwell.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 31, 2018, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


                /s/ Lowell D. Pearson