IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MIKE CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:18-cv-04129-BCW |
| ) | |
| v. ) | |
| ) | |
| CHERI TOALSON REISCH, individually and in ) | |
| her official capacity as Representative of ) | |
| the 44th District of the Missouri House of ) | |
| Representatives, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT CHERI TOALSON REISCH'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Not surprisingly, Plaintiff's Response to Ms. Reisch's Motion to Dismiss (Doc. 14) relies heavily on the Southern District of New York's decision in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018) ("*Knight*"). Ms. Reisch has already discussed the incorrectness of that opinion at length in the Suggestions in Support of her motion. *See* Doc. 10, pp. 11-12. As explained in greater detail below, Plaintiff's Response fails to overcome Ms. Reisch's points in support of her Motion because (1) Plaintiff's theory of "state action" relies on circular logic inconsistent with First Amendment and Section § 1983 precedent; (2) Plaintiff's public forum analysis expands the "government ownership and control" prong beyond recognition; and (3) Plaintiff's public policy arguments are irrelevant to the legal questions before the Court. The Court therefore should grant Ms. Reisch's Motion to Dismiss.

**I.    <u>Plaintiff's State Action Arguments Ask the Court to Compound the Errors in <i>Knight</i></u>**

To state a § 1983 claim, Plaintiff must show that Ms. Reisch "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

KCP-8417093-2

authority of state law'" when she blocked Plaintiff's Twitter account. *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (noting that "the deprivation must be caused by the exercise of some right or privilege *created by the State* . . . ." (emphasis added)). In her Suggestions in Support, Ms. Reisch noted that her power to block Plaintiff's account is not an exercise of a right or privilege created by the state or accorded to her via her status as a government official. Instead, it is a software feature created by Twitter, Inc., and made available to every Twitter user in the world. Plaintiff's Complaint therefore fails to satisfy the state action element of a § 1983 claim.

Responding to this argument, Plaintiff doubles down on *Knight*'s erroneous state action analysis. Like *Knight*, Plaintiff side-steps the inconvenient state action question, arguing that the relevant "power" exercised by Ms. Reisch is not her ability to block Plaintiff on Twitter, but rather her ability to create a designated public forum. This argument fails for two reasons.

### A. Plaintiff's State Action Argument Mischaracterizes His Own Pleadings

As an initial matter, Plaintiff's argument mischaracterizes the allegations in his own Complaint. The Complaint consistently identifies the act of *blocking his account*—not creation of a public forum—as the conduct that Ms. Reisch allegedly undertook pursuant to state law and that violated his First Amendment rights. *See* Doc. 1, ¶ 44; *see also* ¶ 45 ("*Blocking* Campbell from participating in the designated public forum . . . violates the Free Speech Clause of the First Amendment." (emphasis added)), and ¶¶ 46-49 (similarly identifying "blocking" as the state action underlying his § 1983 claim). His new focus on the creation of a public forum is an attempt to salvage his otherwise insufficient allegations of state action.

### B. Plaintiff's Argument Improperly Conflates Forum Analysis And State Action

Plaintiff's focus on the creation of the forum as the relevant state action obscures the appropriate state action test. According to Plaintiff, Ms. Reisch must have exercised a power conferred to her as a government official because she created a designated public forum. Beneath Plaintiff's argument lies the following syllogism:

1. If Ms. Reich's Twitter accounts is a designated public forum, then she exercises state authority in operating it;

2. Ms. Reisch's Twitter account is a designated public forum;

3. *Therefore*, Ms. Reisch exercises state authority in operating her Twitter account.

The law does not permit this flawed reasoning. Indeed, there is a host of authority that sets forth a nuanced framework for determining when the conduct of a nominally-private actor counts as state action. *See*, *e.g.*, *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001); *Evans v. Newton*, 382 U.S. 296, 299 (1966). A subset of that authority applies this analysis even where a private actor controls a public forum. *See Wickersham v. City of Columbia, Mo.*, 371 F. Supp. 2d 1061, 1076 (W.D. Mo. 2005) (applying *Brentwood* to determine whether the conduct of a nominally-private entity in excluding the plaintiffs from a public forum was "state action" for purposes of § 1983); *People for the Ethical Treatment of Animals, Inc. v. Kansas State Fair Bd. ("PETA")*, 891 F. Supp. 2d 1212, 1221 (D. Kan. 2012) (same). None of the careful analysis undertaken in these cases was necessary if, as Plaintiff and *Knight* contend, a party's ability to control a public forum alone supplies the requisite state action to sustain a § 1983 claim.

*Halleck v. Manhattan Cmty. Access Corp.*,—a case relied upon by *Knight* (albeit incorrectly)—is a good example of how this analysis should proceed. 882 F.3d 300 (2d Cir.

2018). There, the Second Circuit considered whether the conduct of a private non-profit entity charged with operating public access channels was state action. *Id.* at 301. The court recognized that "facilities or locations deemed to be public forums are *usually* operated by governments." *Id.* at 306. But the court was clear that this observation does not end the analysis when the person or entity operating the forum is a private one. *Id.* at 307. The court noted: "whether the First Amendment applies to the individuals who have taken the challenged actions in a public forum depends on whether they have a sufficient connection to governmental *authority* to be deemed state actors." *Id.*

That connection was established in *Halleck* because the public access channels were created by federal legislation, with the express purpose of providing "the public an enhanced opportunity to express its views" and to serve "[a]s . . . 'the video equivalent of the speaker's soap box or the electronic parallel to the printed leaflet.'" *Id.* (quoting H.R. Rep. No. 98-934, at 30 (1984)). Further, the non-profit corporation at issue was designated by a senior government official with jurisdiction to operate the public access channels. *Id.* In other words, both the existence of the channels and the non-profit's authority over them were created *by official government acts*. As a result, the court concluded that the non-profit had a sufficient connection to government authority to qualify as a state actor under § 1983. *Id.*; *see also PETA*, 891 F. Supp. 2d at 1221 (finding the conduct of the Kansas State Fair Board in controlling a public forum to be "state action" where the Board was created by statute, was granted governmental authority by state statute, and received and remitted funds to the state treasury).

Here, by contrast, Plaintiff identifies no factors that favor finding of state action. Without citing any supporting law, Plaintiff asserts that Ms. Reisch, by "tweeting her thoughts on a matter of public policy," "disseminat[ing] . . . a legislative agenda," and "seek[ing] comment from her

constituents on matters of public concern" has created a designated public forum in a way that a private actor cannot. *See* Doc. 14, p. 10.

Not so. Millions of private individuals can (and do) tweet their views on public policy. Private interest groups ranging from the National Education Association to the National Rifle Association disseminate legislative agendas online and through social media channels like Twitter. And political candidates regularly use Twitter to solicit comment from the public on matters of public concern. No one would seriously contend that these private actors are subject to the First Amendment. Unlike the public access channel in *Halleck*, the ability of Twitter users to engage in the activities listed by Plaintiff does not derive from any governmental authority. Plaintiff's conclusory allegations that Ms. Reisch has done so in a public forum do not change this result. The Court should find that Plaintiff's Complaint fails to plausibly allege state action and dismiss it accordingly.

## II. Plaintiff Mischaracterizes Ms. Reisch's Argument That She Lacks Sufficient Ownership Or Control Over Her Account To Create A Designated Public Forum

In support of her Motion to Dismiss, Ms. Reisch argued that public forum analysis is inappropriate for a website owned by a private party, Twitter, Inc., and where her ability to use these services rests solely on Twitter, Inc.'s permission—permission that it could revoke tomorrow for any or no reason. Ms. Reisch's minimal rights in the account cannot plausibly create governmental ownership or control over the account. In response, Plaintiff mischaracterizes Ms. Reisch's argument regarding Twitter's ownership of the account as one that "essentially contends the government must hold the legal title to a space before it can be considered a public forum." Doc. 14, p. 11. This argument is a straw man. Ms. Reisch recognizes the law is clear that government ownership is not dispositive.

But the "ownership or control" prong does require *some* enforceable property interest. Even assuming Ms. Reisch is a government actor here, her rights in her Twitter account are, at most, properly characterized as a *revocable license* to use the services. By contrast, the cases cited by Plaintiff in support of the proposition that ownership is not dispositive still involved *some* enforceable property interest held by the government. *See Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661 (2010) (involving a religious student's right of access to public university resources); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 792 (1985) (concerning a non-profit group's access to a charitable fundraising campaign run by the federal government for federal employees); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983) (concerning a rival union's right of access to teacher mailboxes and the interschool mail system of public school district); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 552 (1975) (access to a theatre a city held under a long-term lease).[1]

By contrast, a revocable license, like the one Ms. Reisch has to use Twitter's services, does not provide her an enforceable property right. *Cf. Conti v. United States*, 48 Fed. Cl. 532 (2001), *aff'd*, 291 F.3d 1334 (Fed. Cir. 2002) (holding that a "revocable license or privilege" does not qualify as a property interest under the takings clause). No case (besides *Knight*) has held that a governmental property interest as slight as a revocable license to use a third-party's software services satisfies the "governmental ownership or control" prong of public forum analysis. The Court should decline to do so here.

---

[1] *See generally Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 827 (1996) (Thomas, J., dissenting) (noting that the "private property dedicated to public use" exception in public forum law "properly refers to the common practice of formally dedicating land for streets and parks when subdividing real estate for developments," a practice which "at least create[s] enforceable public easements in the dedicated land").

### III. Plaintiff's Public Policy Argument Cannot Overcome The Supreme Court's Concerns About Forum Closure

In his final point, Plaintiff attempts to refute Ms. Reisch's argument that declaring her Twitter account to be a public forum—and thereby encumbering it with First Amendment restrictions—risks closure of that forum altogether. Plaintiff counters that public policy should favor open debate; thus, political figures who use Twitter to promote themselves should not be permitted to hide from criticisms communicated through it.

Plaintiff's argument is perhaps sound, perhaps not, depending on one's public policy preferences. Regardless, it is irrelevant. The Court's task here is to apply the First Amendment and the precedent interpreting it, not to engineer a favorable public policy outcome. Plaintiff similarly might prefer that elected officials and candidates read all mail from constituents, endeavor to hear and understand the concerns of protesters, and carefully study critical editorials and media coverage. That is an entirely separate question, however, from whether First Amendment compels them to do so.

Ms. Reisch's argument that the application of forum doctrine to her Twitter account risks closure of that forum altogether is not some abstract musing about public policy. Rather, the argument addressed a factor that the Supreme Court has expressly directed courts to evaluate when considering whether it is appropriate to apply forum analysis to a particular space. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 480 (2009) ("where the application of forum analysis would lead almost inexorably to closing of the forum, it is obvious that forum analysis is out of place"). The Court should decide this motion based on the First Amendment tests set forth in Supreme Court precedent, and decline Plaintiff's invitation to speculate about what legal interpretations might best suit Plaintiff's public policy preferences.

### IV. The Court Should Deny Plaintiff's Motion to Strike Or, Alternatively, Convert The Motion Into One for Summary Judgment

Last, Ms. Reisch addresses the motion to strike Plaintiff raises in his response brief. Plaintiff asserts that the Court must strike this material from Ms. Reisch's Suggestions in Support as extraneous to the pleadings: (1) Ms. Reisch's citations to a handful of her own tweets, (Doc. 10, n. 1-3); the screen captures displayed on pages 8-9; and citations to Twitter's Terms of Service (*id.*, p. 13). Citing no case law, Plaintiff asserts that these references are immaterial because the Court's evaluation of a motion to dismiss is confined to the allegations in the Complaint.

But that is not strictly true. A court may consider matters which are subject to judicial notice, and Ms. Reisch's cited three cases showing that the Court may properly take judicial notice of the internet material referenced in her brief: *Kittle-Aikeley v. Strong*, 844 F.3d 727, 744 (8th Cir. 2016) (taking judicial notice of websites); *Luman v. Anderson*, No. 08-0514-CV-W-HFS, 2010 WL 11565449, at *3 n. 2 (W.D. Mo. Nov. 16, 2010) (taking "judicial notice of internet postings"); *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1147-48 (N.D. Cal. 2013) (judicial notice appropriate for blog posts "readily verifiable by reference to the web addresses").

Plaintiff's attempts to distinguish this authority are unavailing. *See* Doc. 14, p. 8 n. 2. First, Plaintiff tries to distinguish *Kittle-Aikely* because there, the Eighth Circuit "took judicial notice of *government documents*," *id.* This is a curious argument: Plaintiff's entire theory of constitutional liability depends on Ms. Reisch's tweets being "government documents." Ms. Reisch is comfortable distinguishing *Kittle-Aikely* on this basis, as it would necessarily require dismissal of Plaintiff's § 1983 claim for lack of state action. In any event, it is not true that the Eighth Circuit confined the scope of judicial notice to government documents in *Kittle-*

*Aikely*—the court also took "judicial notice of www.aclu.org and related web sites." 844 F.3d at 744. And contrary to Plaintiff's claim, it is far from clear that the internet postings Judge Sachs took judicial notice of in *Luman* were cited by the plaintiffs. *See* 2010 WL 11565449, at *3 n. 2. Regardless, there is no indication that the procedural propriety of judicial notice in that case depended on which party proffered the noticed material. *Id.* Finally, although Plaintiff is correct that the court in *Signature Mgmt.* took judicial notice of the *existence* of blog posts—not the truth of the content in them—that is no more than what Ms. Reisch asks the Court to do here.

None of the material referenced by Ms. Reisch raises factual questions subject to serious dispute. The footnotes on page 2 simply provide a sampling of the content of Ms. Reisch's tweets. They are not presented to prove, for example, that the Centralia Anchorfest is *in fact* "anchored in tradition," or that Columbia, Missouri is *in fact* "the only place in the word where Oscar Mayer hot dogs are made." *See* Doc. 10, p. 2 n. 1, 3. Similarly, the screen captures on pages 6 and 8 merely illustrate where a blocked user's tweets appear in the "interactive space." And Plaintiff's argument that the Court should decline to take judicial notice of Twitter's Terms of Service is contrary to numerous decisions in which courts have deemed it appropriate to consider a website's terms of service in deciding a motion to dismiss. *See*, *e.g.*, *Inman v. Technicolor USA, Inc.*, No. CIV.A. 11-666, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011) (taking judicial notice of eBay's user agreement); *Mehmet v. Paypal, Inc.*, No. C-08-01961 RMW, 2009 WL 815676, at *2 (N.D. Cal. Mar. 27, 2009) (taking judicial notice of PayPal's user agreement); *In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *3 (N.D. Cal. Dec. 28, 2012) (taking judicial notice of Google's Terms of Service).

For these reasons, the Court should deny Plaintiff's motion to strike. But to the extent it deems any of the disputed material beyond the scope of a motion to dismiss, it should simply

convert the motion to one for summary judgment.  The parties can then establish the minimal evidentiary record required to authenticate this material, and this case can be presented to the Court for an efficient resolution.

For the foregoing reasons, Ms. Reisch respectfully requests that the Court overrule Plaintiff's points in opposition, grant her motion to dismiss, and dismiss Plaintiff's Complaint with prejudice.

Dated:  October 10, 2018.                    Respectfully submitted,

/s/ Lowell D. Pearson
Lowell D. Pearson                              MO# 46217
Michael R. Owens                               MO# 67002
HUSCH BLACKWELL LLP
235 East High Street, Suite 200
P. O. Box 1251
Jefferson City, MO  65102
Telephone:  (573) 761-1115
Facsimile:  (573) 634-7854
lowell.pearson@huschblackwell.com
michael.owens@huschblackwell.com

***Attorneys for Defendant Cheri Toalson Reisch***

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2018, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Lowell D. Pearson
Attorney for Defendant