# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MIKE CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-04129-BCW |
| | ) |
| CHERI TOALSON REISCH, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Cheri Toalson Reisch's motion to dismiss. (Doc. #9). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

Plaintiff Mike Campbell brings a 42 U.S.C.§ 1983 claim against Defendant, Missouri state representative Cheri Toalson Reisch, alleging that Reish violated his First Amendment rights by blocking him from commenting on her Twitter account. Campbell seeks declaratory and injunctive relief.

Under the allegations of Campbell's first amended complaint (Doc. #22),[1] Reisch is a State Representative for the 44th District of the Missouri House of Representatives. Reisch uses a social media platform Twitter. Reisch has operated a Twitter account under the handle[2] "@CheriMO44" since September 2015 ("Account"). Her Twitter profile states: "Christian, MO State Rep 44th District, Mother, Grandmother."

---

[1] The instant motion was filed in response to Campbell's original complaint (Doc. #1), alleging claims against Reisch in her individual and official capacities and seeks damages. Campbell's amended complaint asserts claims against Reisch solely in her official capacity and does not pray for damages. The amended complaint is otherwise identical to the original complaint, and the parties agree that this motion may be decided on the basis of the amended complaint.

[2] A user handle is a unique account name, which consists of an @ symbol followed by a word or phrase (e.g., @RealDonaldTrump).

1

Twitter is a social media platform owned and operated by Twitter, Inc., with more than 300 million active users worldwide. Twitter enables users to publish short messages to the general public called "tweets," to republish or respond to others' tweets, and to interact with other users. Twitter users may "follow" other Twitter users. A followed user's tweets automatically appear in the following user's Twitter feed – a continually updating scroll of new tweets from other users. A user may comment on other users' tweets, or "retweet" their tweets to her own followers. Twitter also enables its users to block particular users from following their tweets. A blocked user who attempts to follow the blocking user will see a message informing the blocked user about the blocking.

Campbell, a resident of Centralia, Missouri, is registered to vote in Missouri's 44th district, for which Reisch sits. Plaintiff is active on social media platforms, including Twitter, which he uses to follow and comment on posts by various state officials, including Reisch. Campbell alleges that Reisch uses her Account to address her constituents, tout her accomplishments as a state representative, and promote her political agenda. Some examples of such tweets alleged in the complaint include: (i) a May 18, 2018 retweet of a message from House Speaker Todd Richardson with the comment, "Thank you Mr. Speaker, you are a true gentleman. We worked hard and got the job done"; (ii) a May 23, 2018 tweet, "Great to have Governor @EricGreitens & Hallsville Mayor at the NRA Bianchi Cup today"; (iii) a June 13, 2018 tweet, "Accomplished much in my 1st 2 years, ready for the next 2." Reisch also uses the account to tweet about various subjects of personal interest to her.

On June 22, 2018, Reisch tweeted about her appearance at a public event, at which her political opponent in the November 6, 2018 general election, Maren Jones, also appeared. Resich tweeted "Sad my opponent put her hands behind her back during the Pledge." On June 23, 2018, Representative Kip Kendrick criticized Reisch's tweet by commenting, "Maren's father was a

Lieutenant in the Army. Two of her brothers served in the military. I don't question [Maren's] patriotism. That's a low blow and unacceptable from a member of the Boone County delegation." Campbell retweeted Kendrick's criticism in Reisch's Account. After this retweet, Reisch permanently blocked Campbell from following or commenting on her Account.

Reisch also allegedly blocked dozens of other Twitter users from seeing or commenting on her tweets, including many of her own constituents in the 44th House District.

Campbell claims that such blocking is an impermissible viewpoint-based restriction that violates his free speech rights under the First and Fourteenth Amendments. In the instant motion, Reisch moves the Court to dismiss Campbell's complaint for insufficient pleading under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## ANALYSIS

Reisch moves for dismissal of Campbell's § 1983 claim, alleging that he failed to state a claim upon which relief may be granted, because he failed to properly allege sufficient factual matter to plead both of the "under the color of state law" and the "deprivation" elements of the claim. Campbell responds that his allegations as to both elements are adequate under Fed. R. Civ. P. 12(b)(b).

3

### A. THE MOTION TO DISMISS IS DENIED.

To state a § 1983 claim, Campbell must plead that (1) "[he was] deprived of a right secured by the Constitution or laws of the United States," and (2) "the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).

#### 1. Campbell sufficiently alleged the deprivation element of his § 1983 claim.

The determination of whether Reisch deprived Campbell of his First Amendment free speech right involves a three-step analysis: (1) whether the speech "is speech protected by the First Amendment"; (2) "whether the putative forum is susceptible to forum analysis at all"; (3) the forum's classification. Knight First Amendment Inst. at Columbia Univ. v. Trump, 302 F. Supp. 3d 541, 564 (S.D.N.Y. 2018) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788 (1985)) (other citations omitted).

The parties do not dispute that Campbell's re-tweet constituted speech protected by the First Amendment. Reisch contends, however, that dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate because (i) the public forum analysis does not apply to Reisch's Account, because Twitter, is owned by a private company; and (ii) Campbell failed to sufficiently allege that any part of Reisch's Account is a designated public forum since her only interest in the Account is a license to use that Twitter can revoke at any time and for any reason; (iii) Campbell has not been excluded from the interactive space within Reisch's Account, because he can still respond to other users' comments within the Account. Campbell responds that the public forum doctrine is applicable to a private space, like a website, based on government control, and that by using her Account to address and seek comment from her constituents on matters of public concern, Reisch created a designated public forum. Campbell further asserts that whether he was actually excluded from the interactive space is irrelevant for purposes of a motion to dismiss.

### *a. The interactive space of the Defendant's Account is susceptible to the forum analysis.*

"For a space to be susceptible to forum analysis, it must be owned or controlled by the government." Knight, 302 F. Supp. 3d at 565 (citing Cornelius, 473 U.S. at 801). "[T]he application of forum doctrine must be consistent with the purpose, structure, and intended use of the space." Id. The space may be "a forum more in a metaphysical than in a spatial or geographic sense." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 830 (1995). It may "lack[ ] a physical situs." Cornelius, 473 U.S. at 801.

Reisch's argument relating to the inapplicability of the forum analysis to her Account, relies on Morgan v. Bevin, 298 F. Supp. 3d 1003 (E.D. Ky. 2018). In Bevin, plaintiffs claimed that Kentucky Governor Matt Bevin violated their First Amendment rights by blocking them from his Facebook and Twitter pages. Id. at 1005. The Bevin court noted that "Governor Bevin's Twitter and Facebook accounts are privately owned channels of communication" that "are a means for communicating his own speech, not for the speech of his constituents," and that are "not converted to public property by the use of a public official." Id. at 1011. The Bevin court held that because Governor Bevin uses privately owned Facebook and Twitter pages for his personal speech, to speak on his own behalf, albeit as a public official, "the First Amendment strictures that attend the various types of government-established forums do not apply." Id. at 1010–11 (quoting Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 135 S.Ct. 2239, 2250 (2015)).

In opposition, Campbell urges the Court to adopt the forum analysis in Knight, 302 F. Supp. 3d at 574–75, in which the Southern District of New York addressed whether President Trump's blocking of plaintiffs from following or commenting on his Twitter account violated plaintiffs' free speech rights. The Knight court determined that there are 3 components within each Twitter account: (i) the content of the tweets; (ii) the timeline comprised of those tweets and the comment threads those tweets initiate; and (iii) the "interactive space" associated with each tweet,

in which other users may directly interact with the content of the tweets. 302 F. Supp. 3d at 566. The Knight court held the content of the tweets sent by Trump and "the account's timeline, which 'displays all tweets generated by the [account]'" are not subject to the forum analysis, because these components represent government speech, which "is one category of speech that falls outside the domain of forum analysis." Id. at 571. However, the court further concluded that although forum analysis does not apply to Trump's Twitter account as a whole, it applies to "the interactive space associated with each tweet in which other users may directly interact with the content of the tweets." Id. at 566. In so concluding, the Knight court noted that the President and his staff exercised sufficient control over the account to satisfy the government-control requirement. Id. at 566.

The Court finds that the fact that Twitter is privately owned does not preclude a finding that it is susceptible to the public doctrine analysis. The Supreme Court has held that "to evoke First Amendment concerns," "a speaker must seek access to public property or *to private property dedicated to public use* to evoke First Amendment concerns." Cornelius, 473 U.S. at 801 (emphasis added); see also Columbia Broad. Sys., Inc. v. Democratic Nat. Comm., 412 U.S. 94, 134 (1973) ("The First Amendment has also been held applicable where private parties control essentially public forums.").

Other courts that dealt with First Amendment violations in the context of social media accounts and pages or their components, treated such accounts and pages as public spaces susceptible to the public forum doctrine. See, e.g., Packingham v. North Carolina, 137 S.Ct. 1730, 1735 (2017) (comparing social media to traditional public fora such as parks and streets); Davison v. Loudoun Cty. Bd. of Supervisors, 267 F. Supp. 3d 702, 716 (E.D. Va. 2017) ("When one creates a Facebook page, one generally opens a digital space for the exchange of ideas and information."); Davison v. Plowman, 2017 WL 105984, at *3 (E.D. Va. Jan. 10, 2017) ("the Commonwealth's

Attorney's Facebook page qualifies as a limited public forum for First Amendment purposes") (citation omitted); Price v. City of New York, 2018 WL 3117507, at *15 (S.D.N.Y. June 25, 2018) ("the City's official Twitter pages share many characteristics of public forums [. . .]": Twitter is "generally open to the public"; appears to be "designed for and dedicated to expressive activities"; and appears to have "as a principal purpose . . . the free exchange of ideas").

Similarly, this Court believes that the public forum doctrine applies to Reisch's Twitter Account. In particular, the Court finds convincing the rationale in Knight that the interactive space following each tweet in which other users may directly interact with the content of the tweets is subject to forum analysis.

### b. *Forum classification is not necessary for purposes of the instant motion to dismiss.*

Reisch next argues that she lacks the required ownership or control (i.e., some enforceable property interest) over the Account to create a designated public forum, her only interest being a revocable license to use Twitter services. Campbell insists that by using the Account to address her constituents and inviting their replies in the interactive space, Reisch did create such a forum.

There are three types of public fora: traditional public fora, designated public fora, limited public fora, and nonpublic fora. See, e.g., Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469-70 (2009).

As stated above, courts that dealt with this issue, have classified social media pages (or their components) differently. However, for purposes of the motion to dismiss, the Court need not decide which type of forum was created, because "[r]egardless of whether it occurs in a public, designated, or nonpublic forum, viewpoint discrimination that results in the intentional, targeted expulsion of individuals from these forums violates the Free Speech Clause of the First Amendment." Price, 2018 WL 3117507, at *16 (Rosenberger, 515 U.S. at 829); see also Davison v. Randall, No. 17-2002, 2019 WL 114012, at *12 (4th Cir. Jan. 7, 2019) (refusing to decide

whether a Facebook page is a traditional or a designated public forum and stating that "viewpoint discrimination" is "prohibited in all forums").

### c. *Applicability of the forum analysis does not increase the risk of forum closure.*

Reisch next argues, relying on Pleasant Grove, 555 U.S. 460, that the Court should dismiss Campbell's complaint, because unblocking him from her Account risks forum closure. In Pleasant Grove, a municipality denied a private religious group's request to allow it to erect a "monument in a city park in which other donated monuments were previously erected." 555 U.S. at 464. The plaintiff religious group sought relief under the First Amendment, arguing that the city park constituted a traditional public forum, and therefore that the city could not reject the religious group's proposed monument when it had previously allowed construction of a monument associated with another religion. Id. at 466. The Supreme Court in Pleasant Grove held that "public forum principles . . . are out of place" in the context of displaying donated monuments in a public park, due to scarcity of space available in parks for such permanent displays. Id. at 479–80.

Campbell responds by relying on the Knight court's analysis, which rejected the analogy to Pleasant Grove. The Knight court held that posting comments in the interactive space of a Twitter account is analogous to the idea of public parks accommodating a large number of speakers, to which the "limited space" exception In Pleasant Grove does not apply. This Court finds this rationale persuasive.

Further, to the extent Reisch argues that she might reasonably decide that no Twitter account is better than one open to profane, racist, or obnoxious content, such viewpoint-neutral restrictions are not at issue in this case. With all reasonable inferences drawn in Campbell's favor for purposes of this motion, he properly alleged that blocking amounts to a viewpoint-based restriction. Knight, 302 F. Supp. 3d at 575.

> ### d. The Court need not address whether Defendant's actions amounted to Plaintiff's exclusion from the public forum.

Reisch also argues that Campbell has not been fully excluded from the interactive space, because although he cannot respond directly to Reisch's tweets, he can respond to other users' commentary following Reisch's tweets. As Campbell correctly argues, whether or not this limitation actually amounts to a restriction violative of his First Amendment rights is not a proper inquiry for purposes of a motion to dismiss. Therefore, the Court need not address this argument.

**2. Plaintiff sufficiently alleged that Defendant acted under the color of state law.**

Reisch also argues that Campbell insufficiently alleged the second element of his § 1983 claim – that she was acting under the color of state law. Reisch argues that (i) she does not operate her account on behalf of the State and (ii) blocking a Twitter account is not an exercise of state power. Campbell asks the Court to rely on the analysis in Knight, where the court addressed the issue of state action together with the public forum analysis, concluding that "[b]ecause facilities or locations deemed to be public forums are usually operated by governments, determining that a particular facility or location is a public forum usually suffices to render the challenged action taken there to be state action subject to First Amendment limitations."

Section 1983's "under color of state law" requirement has consistently been treated as equivalent to the Fourteenth Amendment's "state action" requirement. United States v. Price, 383 U.S. 787, 794 n.7 (1966).

To determine whether an official is acting under the color of law, courts "look to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." Ramirez–Peyro v. Holder, 574 F.3d 893, 900 (8th Cir. 2009). "This nexus inquiry is necessarily fact intensive . . . ." Id. at 901. "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to

state law." Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997) (internal quotation marks omitted). "The [color of law] element is satisfied if the defendant acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." Johnson v. Phillips, 664 F.3d 232, 240 (8th Cir. 2011). Purely personal pursuit is not attributable to the state. Screws v. U.S., 325 U.S. 91 (1945).

The Court finds instructive the analysis on this issue in a recent decision of the Fourth Circuit in Davison v. Randall, 912 F.3d 666 (4th Cir. 2019). In that case, defendant Phyllis Randall, who served as the Chair of the Loundoun County, Virginia, Board of Supervisors created and administered a Facebook Page "Chair Phyllis J. Randall" ("Page"). Id. at 673. One of her constituents, Brian Davison, similarly brought a § 1983 claim, asserting that Randall's banning him from the Page violated his free speech rights. Id.

The Fourth Circuit agreed with the district court's conclusion that Randall acted under color of state law based on the following findings: that Randall created and administered the Page "to further her duties as a municipal official," because she used the Page "as a tool of governance," by "provid[ing] information to the public about her and the Loudoun Board's official activities and soliciting input from the public on policy issues she and the Loudoun Board confront," such as "inform[ing] the public about serious public safety events," "keep[ing] her constituents abreast of the County's response to a snowstorm and to coordinate snow removal activities." Id. at 680 (citing Davison, 267 F. Supp. 3d at 713). The Fourth Circuit also quoted favorably the district court's findings that Randall:

> swathe[d] the [Page] in the trappings of her office. Among other things, (1) the title of the page includes [her] title; (2) the page is categorized as that of a government official; (3) the page lists as contact information [her] official County email address and the telephone number of [her] County office; (4) the page includes the web address of [her] official County website; (5) many—perhaps most—of the posts are expressly addressed to "Loudoun," [her] constituents; (6) [she] has submitted posts on behalf of the [Loudoun Board] as a whole; (7) [she] has asked her constituents

> to use the [Page] as a channel for "back and forth constituent conversations"; and
> (8) the content posted has a strong tendency toward matters related to [her] office.

Id. at 680-81 (citing Davison, 267 F. Supp. 3d at 714). The Fourth Circuit concluded that "Randall clothed the . . . Page in the power and prestige of her state office, and created and administered the page to perform actual or apparent duties of her office." Id. at 681 (citations, internal quotation marks, and brackets omitted).

In this case, similarly, Campbell's allegations and reasonable inferences from them are sufficient to plead that Reisch acted under color of state law. Campbell alleges that Reisch uses her Account under the handle of @CheriMO44 "to address her constituents, tout her accomplishments as a state representative, and promote her political agenda," "to engage in political discourse related to her official duties as a state representative" and "open[] her account to comment by the general public." In the Court's view, these allegations are sufficient to plead that Reisch acted under the color of state law.

To the extent Reisch argues that Campbell's complaint fails to allege that the blocking of Campbell was done in the "exercise of [a] right or privilege created by the State," and thus under the color of state law, Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982), the Court disagrees.

In addressing this argument, the Court again relies on the Fourth Circuit's analysis in Davison, 912 F.3d 666, which held that the specific actions of banning Davison "[we]re linked to events which arose out of [Randall's] official status" and that "the district court correctly held that Randall acted under color of state law in banning Davison from the [Page]." Id. at 681 (citation omitted). In arriving at this conclusion, the Fourth Circuit emphasized that Randall's post to the Page prompting Davison's comment "informed the public about what happened at the Loudoun Board and Loudoun County School Board's joint meeting[,]" and that "Davison's comment also dealt with an issue related to that meeting and of significant public interest—School Board

members' alleged conflicts of interest in approving financial transactions." Id. The court further stated that "Randall's ban of Davison amounted to an effort to suppress speech critical of such members' conduct of their official duties or fitness for public office, which further reinforces that the ban was taken under color of state law." Id. (citation, internal quotation marks and brackets omitted).

In this case, from Campbell's allegations that Reisch tweeted about her appearance at a public event and questioned the patriotism of her political opponent, Maren Jones, it is reasonable to infer that she attended the public event and tweet about her political opponent in her capacity as a public official. Thus, Campbell's allegations create a reasonable inference that by blocking Campbell in response to his criticism of her tweet regarding her opponent following her appearance at a public event, Reisch was acting under the color of state law. Accordingly, it is hereby

ORDERED Defendant's motion to dismiss (Doc. #9) is DENIED.

IT IS SO ORDERED.

DATED: February 8, 2019

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT